**In re Henry J. LUHMAN, Debtor.**

**Stephen H. HUTZELMAN, Trustee in Bankruptcy of North East Projects, Inc., Plaintiff,**

**v.**

**Henry J. LUHMAN, Defendant.**

**Bankruptcy No. 90–00449E.
Adv. No. 91–0172.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 1, 1992.

**164**

Stephen H. Hutzelman, Erie, Pa., for plaintiff.

Michael S. Janjanin, Erie, Pa., for defendant.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Henry J. Luhman ("Debtor" or "Luhman") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 20, 1990. Stephen H. Hutzelman, Esq. ("Trustee") is the Trustee in the bankruptcy of North East Projects, Inc., a corporation in which Luhman was the President, Chief Executive Officer and Chief Operating Officer. The Trustee filed the within Complaint Objecting to Discharge ("Complaint") pursuant to 11 U.S.C. § 727(a)(5) on the grounds that Luhman's use of funds for the purchase of illegal drugs is not a satisfactory explanation of the use of assets. At the conclusion of the trial in this matter, the Trustee made an oral motion to amend the Complaint to add § 727(a)(3) as an additional ground to object to discharge.

Luhman asserts that he has adequately explained the loss or deficiency of his assets as required under § 727(a)(5); that the Trustee's argument under § 727(a)(3) was waived by the failure to allege it in the Complaint; and that the Debtor's failure to maintain records of his financial condition is justified under the circumstances of the case.

### Discussion

The Debtor admits to the expenditure of substantial sums of money on illegal drugs during two separate bouts with cocaine addiction. One of them from the 1970's–1981 and the second period from 1984–1986.

It is essentially the Trustee's position that the Debtor's undocumented use of the funds for cocaine during the above periods should result in a denial of discharge in the Debtor's 1990 bankruptcy case.

The Trustee relies on § 727(a)(3) and § 727(a)(5) of the Bankruptcy Code which provides that a debtor will be denied a discharge if:

> .  .  .  .  .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

> .  .  .  .  .

(5) the debtor has failed to explain satisfactorily ... any loss of assets or defi-

ciency of assets to meet the debtor's liabilities.

.   .   .   .   .

11 U.S.C. § 727.

■ This is not the bankruptcy of the corporation—but that of an individual. A corporate or business debtor is held to a higher standard of record keeping. *See Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir.1992). There is no indication that the corporate records were not available to the Trustee; it is only the records of this individual which the Trustee asserts are deficient.

In *Meridian Bank*, a tax attorney/international investment and real estate consultant was denied a discharge from debt for failing to maintain adequate books or records which would truly reflect his financial condition. *Id.* The Debtor in *Meridian Bank* openly acknowledged his intent to transact business solely in cash to avoid creditors. *Id.* at 1228. The Court stated that "the debtor must maintain and preserve adequate records. If the debtor fails to do so, there must be some justification." *Id.* at 1230–31. "The Bankruptcy Code does not specify what constitutes justification for maintaining inadequate records; instead it requires the trier of fact to make a determination based on all the circumstances of the case." *Id.* at 1231. The Court continued:

> Depending upon the sophistication of the debtor and the extent of his activities, different record keeping practices are necessary. *See, e.g., Goff v. Russell Co.*, 495 F.2d 199, 201–02 (5th Cir.1974) ("Obviously an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account. A higher standard of care is required, however, for a merchant actively engaged in credit transactions."). As an experienced attorney Mr. Alten is not an unsophisticated wage earner. He is a knowledgeable business and professional person who knew the value of maintaining adequate records. He generated substantial revenue and traveled extensively throughout the world, and was in the international investment and real estate consulting business for many years preceding this bankruptcy. Sophisticated business persons are generally held to a high level of accountability in record keeping.

*Meridian Bank*, 958 F.2d at 1231.

The Debtor in this case is distinguishable from the debtor in *Meridian Bank*.

■ The Debtor in this case testified that during the years in question, he earned wages of $10,000–15,000 per year. With earnings of $10,000–15,000 per year, it is not reasonable to expect detailed records of the Debtor's personal expenditures.

■ Further, the Debtor testified that his drug use ceased in 1986, some four years prior to the filing of the instant bankruptcy. While we do not condone the Debtor's drug activities and agree with the Trustee that substantial amounts of the Debtor's funds were spent on drugs, we think that in view of the passage of time between the expenditures and the filing of the Petition, the Debtor has satisfactorily explained the use of funds. Not only were funds used on drugs, but the Debtor suffered losses in his business as well. It may be that the business suffered because the Debtor was impaired by drugs—but it is apparent that substantial business losses did occur.

We do not believe that this is the type of case where, without any substantiation, the Debtor conveniently explains that the money was lost or spent on alcohol, drugs, sex, gambling, etc. There is corroborating evidence that the Debtor did have a drug problem—he testified under grants of immunity in prosecutions brought for violations of drug laws against drug distributors in the United States District Court. The evidence also indicates that the Debtor has had drug rehabilitation treatment.

■ Illegal activities in themselves do not operate as a bar to discharge. *In re Mitchell*, 74 B.R. 457 (Bankr.D.N.H.1987). A discharge is dependent upon a true presentation of the Debtor's financial affairs. *Id.*

There is no evidence of falsity in the Debtor's schedules or any reason to believe the Debtor has not presented a true picture of his financial affairs as they stand today.

The Trustee directs us to several cases in which a debtor who addicted to drugs was denied a discharge. *In re Dolin,* 799 F.2d 251 (6th Cir.1986); *In re Watson,* 122 B.R. 476, (Bankr.MD Ga.1990); *In re McManus,* 112 B.R. 773 (Bankr.ED Va.1990); *In re Johnson,* 68 B.R. 193 (Bankr.D.Or.1986). In each of these cases, the debtor sought to use drug addiction as an explanation of the loss of substantial assets within a year prior to the bankruptcy. In one case, a portion of the funds were used by the debtor only three days prior to bankruptcy. *In re Dolin,* 799 F.2d at 252. Were Luhman to have dissipated assets over the year prior to his bankruptcy, we would require a much more detailed explanation. However, Luhman indicates that his drug use ceased four years prior to bankruptcy. The Trustee makes no assertion or offers any proof to the contrary.

### Conclusion

We find that the Debtor has adequately explained any loss of assets or deficiency of assets to meet the Debtor's liabilities. We further find that the Debtor's failure to maintain records of his personal transactions is justified under all the circumstances of the case. Having determined that the Trustee's Complaint fails under both § 727(a)(5) and § 727(a)(3), we need not address whether the Trustee waived his argument under § 727(a)(3) by the failure to allege it in the Complaint. The Debtor's discharge will be granted. The Complaint will be dismissed.